**GILMAN FANFOLD CORPORATION, Limited, et al. v. AMERICAN FANFORM CO. et al.**

District Court, S. D. New York.
March 7, 1931.

Duell, Dunn & Anderson, of New York City (Holland S. Duell, James W. Anderson, and David A. Woodcock, all of New York City, of counsel), for plaintiffs.

Pennie, Davis, Marvin & Edmonds, of New York City (Dean S. Edmonds and Leslie B. Young, both of New York City, of counsel), for defendants.

PATTERSON, District Judge.

The plaintiffs brought suit for infringement of patent to Carey, 1,198,326, patented September 12, 1916. Their ownership of the patent and the infringement are not disputed. The sole issue is the validity of the patent, which covers fanfolded forms with isolated spots of transfer material, usually referred to as carbon, on the backs of the leaves.

Fanfolded forms were not originated by Carey. They were familiar long before 1916. This name was given to multi-ply strips of connected forms, first folded lengthwise by zigzag to produce a strip of the same length as the sheet and made up of several superposed plies, and then folded transversely by similar zigzag or else rolled up. They were used in fanfold machines, such as Elliott-Fisher or Underwood billing machines. Some of the forms folded in this fashion had no carbon on the backs of the leaves. For these forms separate carbon sheets were used. Others had their backs entirely coated with carbon, thus dispensing altogether with the use of separate carbon sheets. But none of the earlier patents having to do with fanfolded forms disclosed fanfolded forms with isolated spots of carbon on the backs of the leaves.

Nor was the idea of placing isolated spots of carbon on the backs of blank forms original with Carey. Years before his application was filed, Maxedon had taken out a patent on a manifolding sheet for blank forms, on the back of which the transfer material was placed

in "isolated spots." It is clear from Maxedon's sketch that his invention was adapted to what the plaintiffs call "selective transmission" in copying, which means that some of the data written on one leaf is not copied on one or more of the underlying leaves. Maxedon's invention was a real step forward in the art. His patent, however, did not mention fanfolded forms or even connected forms, but referred to manifolding forms generally.

Several years later a variation or adaptation of Maxedon's idea was put into practice by Rathyen, an employee in the department of finance of New York City. Rathyen devised forms for tax records. Like Maxedon's, these forms had carbon patches on the backs, and the patches were not identically placed on each leaf, being thus adapted if not actually designed for "selective transmission" of data. Rathyen's forms were also connected forms; each set being made from one sheet of paper folded transversely several times in zigzag fashion. They were fanfolded forms, if that term is proper as applied to a single set rather than to continuous sets. No patent was ever applied for. These forms, changed in minor details from time to time, were used from 1910 to 1926 in the collection of real and personal property taxes, and the number of these forms used ran into the millions. Rathyen installed them in Buffalo and Pittsburgh also.

With the prior art in this condition, what Carey proposed was the placing of carbon spots on fanfolded forms. There is dispute whether Carey had any idea of putting the spots on fanfolded forms of the continuous type. Certainly the patent cannot be said to be clear upon the point. In his description Carey seems to have had in mind single sets of forms. But from the fact that he frequently uses the word "fanfold" in the patent and from the fact (stipulated by the parties) that fanfolded forms in 1916 meant generally the continuous type as distinguished from the single set, I think it would be an unreasonable limitation on the patent to hold that it does not cover fanfolded forms of the continuous type.

So far as the Carey patent relates to single sets of forms folded in zigzag and fanfold fashion, with carbon patches on the backs of the leaves, it seems fairly certain that the patent is invalid. The prior use of the New York City tax forms is conceded, and these forms performed every useful function of a single set form under the Carey patent. They were used for the writing of data at a later time, and they were adapted for the copying of data only on certain leaves, which are the two advantages emphasized by Carey in his description. The fact that the earlier forms were connected top and bottom, as contrasted to the lateral connection on Carey's forms, is immaterial. So also as to using separate carbon sheets with the forms.

The remaining question is whether the patent is valid as to continuous fanfolded forms. In my opinion, it is lacking in invention. What Carey did was to take the old fanfolded forms (continuous) and to apply to them Maxedon's isolated spots. But Maxedon's spots were not confined to any particular type of form. They applied to manifold forms generally. Maxedon points out that manifold forms with his spots are to be used in lieu and stead of forms which have their backs entirely covered with carbon, and forms of the latter type, in continuous fanfold, were by no means unknown to the art in Maxedon's day. Then came Rathyen, who demonstrated the use of Maxedon's spots on connected forms. It seems to me that thereafter Carey, in putting Maxedon's spots upon a familiar kind of connected form, did nothing more than what might be expected of any person conversant with forms and their uses.

The bill of complaint will therefore be dismissed.